Argued and submitted September 24, reversed and remanded for new trial November 26, 1979, reconsideration denied January 4, petition for review denied January 15, 1980 (288 Or 335)

## STATE OF OREGON,
*Respondent,*

*v.*

## HECTOR PARRAS,
*Appellant.*

### (No. CR 78-194, CA 13227)

602 P2d 1125

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Gary S. Thompson, District Attorney, Prineville, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

[373]

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant was convicted of rape in the first degree. He appeals, contending that the trial court erred in refusing to suppress certain incriminating evidence seized as a result of defendant's warrantless arrest in his apartment, there having been no exigent circumstances to justify police entry.

On Sunday, March 19, 1978, at 6:10 a.m. a county undersheriff received a report that a rape had occurred during the preceding two hours. The officer arrived at the scene at 6:33 and spoke with the victim, who described the incident, identified the defendant as the rapist and stated that he had not left his apartment. There was no sign of activity in defendant's apartment, which was visible from the victim's apartment; defendant's car, which had been identified, remained parked in front. On closer inspection, the officer found that the drapes on all the windows were almost entirely closed and he could neither see anything inside nor detect any sounds of activity within.

At 6:45, the arresting officer knocked[1] on defendant's door and heard no response. A second officer who arrived at the scene was stationed at the rear of the building and saw and heard nothing; he joined the first officer in entering the apartment with the manager's pass key. The arresting officer testified that he entered to (1) verify if anybody was there, (2) check out complainant's story, (3) make contact with the suspect, (4) ascertain the suspect's welfare, and (5) continue the investigation. That officer further stated that he intended to arrest the suspect if the complainant's story checked out, which he anticipated it would. Defendant was found asleep in bed, was arrested and booked. Subsequently, defendant consented to a search of his apartment, and the questioned evidence was seized.

---

[1] No question has been raised with respect to the failure of the officers, after knocking, to announce their purpose before entering. *See Ker v. California,* 374 U.S. 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963). *Cf. State v. Mason,* 287 Or 157, 161, 598 P2d 670 (1979): "The 'knock and announce' rule presupposes that the police have a right to entry."

It is conceded that the police had probable cause to arrest defendant and that the sole issue is whether there were exigent circumstances which obviated the necessity for a warrant. We start with the proposition that the burden is upon the state to show that the entry into defendant's apartment "fell within the class of permissible exceptions to the requirement of a warrant." *State v. Olson,* 287 Or 157, 165, 598 P2d 670 (1979). We hold that the state has failed to meet that burden.

In *State v. Girard,* 276 Or 511, 514, n 2, 555 P2d 445 (1976), the Supreme Court accepted the following definition of exigent circumstances:

> " '* * * In this context, "exigent circumstances" means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a subject or destruction of evidence.' " (Quoting from *People v. Ramey,* 16 Cal 3d 263, 127 Cal Rptr 629, 545 P2d 1333, 1341 (1976).)

The state's case rests on mere possibilities as to what the defendant might have done if he were aware that the crime had been reported and that the police were on the scene. The arresting officer testified that he believed that the defendant *could* be destroying evidence, preparing an escape through a window, or planning to resist arrest, perhaps with the knife believed to be in his possession. The evidence, however, is that the police had no reason to believe that defendant was aware of their presence or that the crime had been reported. The officers could not see into the apartment and could not hear any activity within. They had no basis for believing that defendant was *likely* to be destroying, or preparing to destroy, evidence, or that he was preparing to escape.

In *State v. Peller,* 37 Or App 467, 475, 587 P2d 510 (1978), this court, in upholding a warrantless entry into the defendant's home, said:

> "* * * An officer is not required to stand around and wait for a defendant to choose which of several

potential exits defendant may wish to use to 'make a break.' Exigent circumstances arise when the possibility of 'making a break' exists. * * *"

On review, however, the Supreme Court reversed (*State v. Peller*, 287 Or 255, 598 P2d 684 (1979)), and after quoting the foregoing passage from our opinion, stated:

"* * * We agree that this is the correct rule when the officers have reason to believe the defendant intends to 'make a break,' as was the case in *Girard.* We do not agree, however, that the mere possibility that defendant could make a break if he were so inclined gives rise to exigent circumstances when there is no indication that he is, in fact, so inclined. Under the Court of Appeals' holding, a warrantless entry would be justified any time the police announced their presence and the defendant refused to come out of his home. The practical effect of this would be to all but eliminate the requirement that there be exigent circumstances in order to justify a warrantless entry to arrest." *State v. Peller,* 287 Or 255, 264, 598 P2d 684 (1979).

We see no viable distinction between this case and *State v. Olson, supra,* or the principles enunciated by the Supreme Court in *State v. Peller, supra,* for determining the presence of exigent circumstances justifying a warrantless entry into a person's home. In *Olson* there was no evidence the defendant was aware the police knew of his involvement in the burglary; therefore, the court concluded "there was no particular danger of his immediate flight," (287 Or at 165) and the failure to secure a warrant was unjustified. In *Peller,* the police knew the defendant knew the police were present and that they wanted to enter; he simply remained in his house and refused to respond to the police when they knocked on the door and announced their identity. The court stated:

"* * * Such actions are as consistent with an intent to remain in the house as they are with an intent to escape. Absent any indications that escape was imminent, the officers in the present case should have

staked out the house and obtained a warrant before entering." 287 Or at 264-65.

Accordingly, we hold that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.