Argued and submitted December 9, 1994, affirmed June 21, 1995

## STATE OF OREGON,
*Appellant,*

*v.*

## DONALD WAYNE MARTIN
## and PATRICIA ELAINE MARTIN,
*Respondents.*

(10-93-07953A, 10-93-07953B; CA A83353)

897 P2d 1187

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John Halpern, Jr., argued the cause and filed the brief for respondent Donald Wayne Martin.

Eric R. Johansen, Deputy Public Defender, argued the cause for respondent Patricia Elaine Martin. With him on the brief was Sally L. Avera, Public Defender.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

De MUNIZ, J.

---

* Riggs, P. J., *vice* Rossman, P. J., retired.

## De MUNIZ, J.

The state appeals a pretrial order suppressing evidence seized from defendants' garage, residence and vehicles. We affirm.

A fire broke out in an unattached garage located 20 feet from defendants' residence. While the firefighters worked to put out the fire, police controlled traffic and onlookers. After about 10 minutes, the fire was "knocked down" and unable to spread. Captain Hoehn of the Cottage Grove Fire Department entered the garage to determine the point of origin of the fire. At the back of the garage was a plywood wall, part of which had been burned through. On the other side of the wall Hoehn, who had seen marijuana grow operations and had taken classes in identifying grow operations, saw pots, potting mix, large lights, timers and other equipment. The items had suffered extensive burn damage.

Hoehn assumed that there was a grow operation in the back room and called for police assistance. Officer Martin from the Cottage Grove police arrived and met Hoehn near the fire truck at the end of the driveway. Hoehn told Martin that there was "a marijuana grow in the garage." Martin followed Hoehn into the garage and looked through the burned wall into the room. Martin saw burned plants and some grow lights.

Martin, who did not have any specialized training in controlled substances, called his supervisor, Captain Craig. Hoehn told Craig that "they had what they thought was a grow." Craig accompanied Hoehn through the garage, looked into the room and saw the contents. Craig immediately contacted Detective Finnerty, a narcotics detective with extensive training and experience working with controlled substances. When Finnerty arrived about 30 minutes later, Craig pointed out the grow area. Finnerty entered the garage alone and went into the grow room. Based on his observations, Finnerty prepared an affidavit for the search warrant[1] that led to the seizure of the evidence that defendants sought to suppress.

---

[1] The state concedes that, if the observations were properly excluded from the affidavit, it does not establish probable cause to search.

The state assigns error to the trial court's suppression of the evidence.[2] It argues that the police officers' observations should not be considered "searches," because they had a right to be on the premises and because, at the time the officers entered, defendants' privacy interests in the garage were "suspended." Defendants contend that we should not address the state's arguments, which, they assert, are being raised for the first time on appeal. The state concedes that, at the hearing, the prosecutor did not rely on the cases the state now cites in its brief. Indeed, the state admits that the issue it now presents "appears to be one of first impression in Oregon," and that its resolution depends on support from decisions of other jurisdictions. Nonetheless, it argues that the prosecutor presented the "theory" that the police observations were lawful and that that is sufficient to preserve its arguments on appeal.

At the hearing, the state relied on *State v. Bunn*, 125 Or App 419, 865 P2d 471 (1993), and *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993), which involved warrantless searches in the context of detoxification facilities. The prosecutor argued that those cases stood for an analysis based on the "reasonableness" of the circumstances, which was "akin" to the circumstances of this case. In response to defendants' arguments, the prosecutor stated:

> "Counsel has raised the cases in his memorandum and has addressed those orally, and I'd just point out to the Court that we're not attempting to cleanse prior illegal search. We don't need to do that because the prior search, if you could call it that, and it's not — that's not the correct term — was lawful. Certainly, the firefighters have a basis for being

---

[2] The trial court found that the officers entered the garage to conduct a criminal investigation, not to render emergency assistance; that the burning garage constituted an exigency that justified a warrantless entry by firefighters who did not need a warrant to remain for a reasonable time to investigate the cause of the blaze after it had been extinguished; that reasonable expectations of privacy remained in the fire-damaged property; that subsequent entries required a warrant, or an exception to the warrant requirement; that the criteria for an exception outlined in *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), *rev den* 317 Or 163 (1993), were not satisfied, because the police officers entered the garage for the purpose of investigating the marijuana grow, and not for the purpose of alleviating the emergency; that there were three unlawful entries into the garage and that the search warrant was invalid as based upon Finnerty's unlawfully obtained observations. It also held that the requirements of the inevitable discovery doctrine, ORS 133.683 and *State v. Miller*, 300 Or 203, 709 P2d 225 (1985), were not established by the record.

there, and of course, it's our position that the officers do too. But certainly, as to the firefighters, they have a basis, a lawful basis for being there. And there's nothing inappropriate about their activities. So we're not attempting to cleanse primary evidence. We're not doing that at all."

■ The state apparently relies on that statement as preserving the issues it raises on appeal. However, we cannot agree that the statement placed before the trial court the theory that the state now argues. We are mindful of the distinction between raising an issue at trial, identifying a source and making an argument in support of a position: the first is essential, the second less so, and the third the least. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). However, the state's position on appeal goes far beyond presenting alternative sources or arguments in support of a position. The state seeks reversal of the trial court on a ground fundamentally different from the one argued below.

■ In *Davis v. O'Brien*, 320 Or 729, 739 n 6, 891 P2d 1307 (1995), the Supreme Court noted that preservation rules generally require that a point be raised earlier rather than later and elucidated:

"This court has indicated that the rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument. *See generally Hitz*, 307 Or at 188 (so noting). In this case, there was no lack of clarity with respect to the issue presented to the trial court by plaintiff's motion *in limine*. The issue was squarely presented to the trial court, and O'Brien had ample opportunity to meet plaintiff's argument." *Id*. at 737.

Unlike the situation in *Davis*, the issues that the state now argues were not squarely presented with clarity for the trial court's consideration and resolution. Even if the court could have discerned from the prosecutor's statement that the state was arguing that no search took place, the statement did not alert the court as to the legal basis on which the state concluded that the officer's entry was reasonable and, therefore, equated with no search. Furthermore, defendants not only did not have an "ample opportunity" to meet those arguments at the trial level, they had no opportunity.

■        A party should not be heard to argue that a trial court committed reversible error because it did not rule in that party's favor on a ground never presented to it. *See State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (generally, on appeal a criminal or civil case should be heard on the same theory on which it was presented in the court below). We decline to address the arguments that the state makes for the first time on appeal.

Affirmed.